The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, Arkansas 71611-8367
Dear Senator Bradford:
You have requested an Attorney General opinion concerning various issues related to minimum standards for police officers. You note that both A.C.A. § 12-9-101 et seq., and A.C.A. § 14-51-301 are applicable to these issues. You have presented several questions, which have been restated as follows:
 (1) If A.C.A. § 12-9-101 et seq., and A.C.A. § 14-51-301 are in conflict, which takes precedence?
 (2) Does A.C.A. § 14-51-301 preclude a police department or civil service commission from implementing educational standards for promotion, such as an associate degree for a lieutenant and a bachelor's degree for assistant chief or chief of police, or an entry level college education requirement?
 (3) Would such an educational requirement violate the "open competitive examination" requirement by limiting the pool eligible to participate in the testing?
 (4) If such requirements are permissible, would the civil service commission still need to proffer a "business necessity" reason for imposing these requirements, in order to avoid running afoul of the EEOC's Uniform Guidelines on Employee Selection Procedures?
RESPONSE
Question 1 — If A.C.A. § 12-9-101 et seq., and A.C.A. § 14-51-301 are inconflict, which takes precedence?
It is my opinion that the provisions of A.C.A. § 12-9-101 et seq., and the provisions of A.C.A. § 14-51-301 do not conflict, and that therefore, there is no question of which of the statutes should take precedence. Nevertheless, it is my opinion, as explained more fully below, that the rules promulgated by the Arkansas Commission on Law Enforcement Standards and Training pursuant to the authority granted in A.C.A. § 12-9-101 et seq., will take precedence over any rules promulgated by a municipal civil service commission.
Before proceeding to discuss the issues, I will set forth the pertinent provisions of the two statutes about which you have inquired.
A.C.A. § 12-9-104(3) empowers the Arkansas Commission on Law Enforcement Standards and Training to "[e]stablish minimum selection and training standards for admission to employment as a law enforcement officer."
A.C.A. § 14-51-301 directs municipal civil service commissions for fire and police departments to promulgate rules providing for an "open competitive examination" for applicants for positions in the departments.
It is my understanding that the particular concern about a possible conflict between the foregoing provisions arises out of the issue of the establishment of educational requirements for law enforcement officers.
The Arkansas Commission on Law Enforcement Standards and Training, under the authority of its general charge to designate minimum selection standards for police officers, quoted above, has promulgated standards that include a requirement of being a high school graduate or having obtained a GED.
The concern regarding a possible conflict with this educational requirement arises out of the fact that A.C.A. § 14-51-301 requires civil service commissions for municipal fire and police departments to base the selection of officers upon "open competitive examinations." A.C.A. §14-51-301(b)(2). This language could appear to require that selection be open to persons who do not meet the required educational standards of the Arkansas Commission on Law Enforcement Standards and Training. I do not interpret the "open competitive examination" requirement in this manner. Rather, I interpret it in conjunction with language that has been added to the statute that specifically authorizes the municipal civil service commission to base selection on factors such as educational qualifications. The amending language states: "The exams may include a rating of applicants based on results of written, oral, or practical examinations, length of service, efficiency ratings, and educational or vocational qualifications." A.C.A. § 14-51-301(b)(9)(A)(ii).[1]
Clearly, therefore, both the Arkansas Commission on Law Enforcement Standards and Training, and municipal civil service commissions are statutorily authorized to create educational requirements for police officers. I must therefore conclude that the two statutes granting this authorization (i.e., A.C.A. § 12-9-101 et seq. and A.C.A. § 14-51-301) do not conflict. There is therefore no question of which should take precedence.
Nevertheless, it is my opinion as explained more fully below, that the rules promulgated by the Arkansas Commission on Law Enforcement Standards and Training can take precedence over any rules promulgated by municipal civil service commissions. Accordingly, municipal civil service commissions cannot, in my opinion, set standards that are lower than the minimum standards established by the Arkansas Commission on Law Enforcement Standards and Training.[2]
My conclusion regarding this matter is based upon the fact that the Arkansas Commission on Law Enforcement Standards and Training has statewide jurisdiction over all law enforcement agencies, whereas municipal civil service commissions have jurisdiction only over the local fire and police departments. Therefore, even though a municipal civil service commission's rules are to have the "force and effect of law,"see A.C.A. § 14-51-301(a)(2), those rules, because of the commission's limited jurisdiction, would be equivalent only to municipal law, and would therefore stand in the same relation to the rules of the Arkansas Commission on Law Enforcement Standards and Training (which has statewide jurisdiction) as municipal law stands to state law. That is, municipal law cannot contradict state law. See Ark. Const., art. 12, § 4. For this reason, I conclude that a municipal civil service commission cannot promulgate rules that would contradict the rules promulgated by the Arkansas Commission on Law Enforcement Standards and Training.
To summarize, therefore, I conclude that A.C.A. § 12-9-101 et seq. and A.C.A. § 14-51-301 do not conflict. Both the Arkansas Commission on Law Enforcement Standards and Training and municipal civil service commissions for fire and police departments are empowered to establish educational standards for law enforcement officers. However, a municipal civil service commission's rules cannot contradict those of the Arkansas Commission on Law Enforcement Standards and Training.
Question 2 — Does A.C.A. § 14-51-301(b)(9)(A), with its reference to"open competitive exams," preclude a police department or civil servicecommission from implementing educational standards for promotion, such asan associate degree for a lieutenant and a bachelor's degree forassistant chief or chief of police, or an entry level college educationrequirement?
It is my opinion, as also expressed in response to Question 1, that A.C.A. § 14-51-301(b)(9)(A) does not preclude a police department or civil service commission from implementing educational standards for promotion.
A.C.A. § 14-51-301 was amended in 1995 to add language allowing the commission to consider educational factors in making promotion decisions. As amended, the statute requires the commission to make rules "[e]stablishing eligibility lists for promotion based upon open competitive examinations." A.C.A. § 14-51-301(b)(9)(A)(i). The amended statute goes on to state:
 (b)(9)(A)(ii) The exams may include a rating of applicants based on results of written, oral, or practical examinations, length of service, efficiency ratings, and educational or vocational qualifications.
A.C.A. § 14-51-301(b)(9)(A)(ii).
In a recent Attorney General opinion, I interpreted the amended statute to allow the consideration of educational qualifications as criteria for promotion. See Op. Att'y Gen. No. 98-174-A. I continue to interpret the statute in that way. I therefore conclude that, as amended, A.C.A. §14-51-301(b)(9)(A) does not preclude a police department or civil service commission from implementing educational standards for promotion.
Question 3 — Would such an educational requirement violate the "opencompetitive examination" requirement by limiting the pool eligible toparticipate in the testing?
It is my opinion that an educational requirement would not violate the "open competitive examination" requirement by limiting the pool eligible to participate in the testing.
As explained in response to Question 2, A.C.A. § 14-51-301 was amended in 1995 to allow the consideration of educational qualifications as criteria for promotions. The amending language that was added to the statute in 1995 had the effect of authorizing the commission to limit the pool by considering educational qualifications. Even with the implementation of educational requirements, the pool of participants in the examination will remain open and competitive among those who meet those requirements.
Question 4 — If such requirements are permissible, would the civilservice commission still need to proffer a "business necessity" reasonfor imposing these requirements, in order to avoid running afoul of theEEOC's Uniform Guidelines on Employee Selection Procedures?
It is my opinion that because of the supremacy of federal law over state law, see U.S. Const., art. 6, § 2, municipal civil service commissions must be prepared to demonstrate their compliance with EEOC requirements, regardless of the provisions of state law. In this regard, such commissions would be well advised to consult their counsel concerning maintenance of data and other documentary evidence, as described in the EEOC guidelines, that can establish their compliance with federal law requirements, or an acceptable defense of any impact created by the application of state law.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] This amending language was added to a provision authorizing the civil service commission to establish eligibility lists for promotion,
based upon an open and competitive examination. I interpret the provision to extend to eligibility for initial appointment, as well as promotion, because any position can be filled from outside the department, and it would be counterintuitive for the requirements for any one position to be greater for people promoting from inside the department than for people being hired from outside.
[2] It should be noted that under A.C.A. § 12-9-106(d), municipal civil service commissions can set standards that are higher than those established by the Arkansas Commission on Law Enforcement Standards and Training.